UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60071-DIMITROULEAS

UNITED STATES OF AMERICA,

 Plaintiff,

v.

CYRUS VANCE,

 Defendant.
_____/

**DETENTION ORDER**

 Pursuant to 18 U.S.C. § 3142(f), on March 28, 2008, a hearing was held to determine whether Defendant Cyrus Vance should be detained prior to trial. Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds that no condition or combination of conditions will reasonably assure the appearance of Defendant as required and/or the safety of any other person and the community. Therefore, it is hereby **ORDERED** that Defendant Cyrus Vance be detained prior to trial and until the conclusion thereof.

 In accordance with the provisions of 18 U.S.C. § 3142(i), the Court hereby makes the following findings of fact and statement of reasons for the detention:

 1. Defendant is charged by Indictment with possession with intent to distribute and distribution of cocaine and at least 5 grams of cocaine base (crack), in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 841(b)(1)(B)). The Government announced its consideration of filing an enhancement in this case, based on Defendant's criminal history. In the absence of the enhancement, Defendant faces a minimum mandatory sentence of five years'

imprisonment, with a maximum of life. Should the Government file the enhancement, Defendant will face a minimum mandatory sentence of ten years' imprisonment, with a maximum of life. Based upon the charges currently in the Indictment, a rebuttable presumption exists that Defendant poses a risk of flight and danger to the community if released. 18 U.S.C. §3142(e) and (f).

    2. Title 18, United States Code, Section 3142(g)(2), requires the Court to consider the weight of the evidence against the defendant. Here, the weight of the evidence is significant. The government has proffered sworn testimony that supports the allegations in the Complaint. Specifically, the government presented the testimony of Nathaniel Holland, a City of Boca Raton Police Department officer and Task Force officer assigned to the Drug Enforcement Administration. Officer Holland testified that in February, 2008, he received information from the Boca Raton Police Department that a confidential source ("CS"), who was trying to obtain consideration in the form of a lower sentence for charges against him, had advised the Boca Raton Police Department that Defendant Cyrus Vance distributed large amounts of crack cocaine in Deerfield Beach and Boca Raton. Upon conducting a criminal history investigation on Defendant, law enforcement officers determined that Vance had previous convictions involving the sale and possession of cocaine and possession of marijuana.

    Thus, law enforcement officers instructed the CS to make telephone calls to Defendant, recorded and monitored by the law enforcement officers, in an effort to make narcotics purchases. The law enforcement officers also specifically directed the CS not to conduct conversations with Defendant unless the conversations were at the direction of law enforcement and were monitored and recorded by law enforcement officers.

    Pursuant to these procedures, the CS called Defendant at Defendant's cell telephone number

and requested to buy some powder cocaine. The CS and Defendant negotiated a price of $670 for the cocaine and agreed to meet at the Cracker Barrel restaurant in Deerfield Beach.

On February 8, 2008, the CS, wearing a recording device, met with Defendant at the Cracker Barrel. Law enforcement officers video and audio-recorded the meeting. At this meeting, Defendant gave the CS a plastic bag containing powder cocaine, in exchange for $670.00.

The CS contacted Defendant on several more occasions over the next few weeks, arranging to make narcotics purchases from Defendant on February 15, 2008, February 22, 2008, and March 5, 2008. Officer Holland testified that all of these communications were monitored and recorded by law enforcement.

In accordance with the arrangements that the CS made with Defendant to buy drugs, on February 15, 2008, Defendant gave the CS powder cocaine and more than five grams of crack cocaine, in exchange for $1,600.00. As with the February 8th transaction, law enforcement officers audio and video-recorded the meeting and exchange.

Similarly, on February 22, 2008, the CS met with Defendant, in accordance with their earlier telephone arrangements. At the meeting, the CS paid Defendant $800.00 for some powder cocaine and more than five grams of crack cocaine. Again, the meeting was audio and video-recorded.

Finally, on March 5, 2008, the CS, as planned in earlier recorded telephone conversations with Defendant, met with Defendant at the Cracker Barrel, where Defendant gave the CS some powder cocaine and more than five grams of crack cocaine, in exchange for $800.00. Law enforcement officers audio and video-recorded the meeting.

Based on Officer Holland's testimony and the fact that the conversations are all audio-recorded and the meetings are all audio and video-recorded, the strength of the Government's case

appears significant.

3. The pertinent history and characteristics of Defendant, of which Sections 3142(g)(3)(A) and (B) require a review, include the following: Defendant has a lengthy record of arrests dating back almost fourteen years. Although several of the dispositions of these charges were unknown at the time of the detention hearing, the Court finds significant, among other convictions, the fact that on three separate occasions, Defendant was convicted of giving a false form of identification to a law enforcement officer. The Court finds this fact of import in its consideration of the risk of flight posed by Defendant. Moreover, while the disposition of many of the drug-related charges in Defendant's criminal history is unknown, Defendant's record also includes multiple convictions for possession of cocaine and marijuana, sale of cocaine, and possession of narcotics equipment, over a number of years. These facts similarly militate against release, both on the basis of risk of flight and danger to the community.

Defendant is a United States citizen, and he has long resided in the Southern District of Florida. Defendant's mother and brother also live in Pompano Beach. Defendant has three minor children. Defendant's mother and grandmother offered to co-sign a bond on Defendant's behalf, as, between the two of them, they own virtually unencumbered property worth approximately $700,000.00. Defendant's mother and grandmother's support is noteworthy and favors release, when considered in a vacuum. Unfortunately, however, the support of Defendant's mother and grandmother cannot overcome the risk of flight and danger to the community illustrated by Defendant's criminal history and the nature of the charges against him in this case.

4. Based on the nature of the charges, Defendant's criminal history, the length of jail time Defendant faces if convicted, and the weight of the case, the Court finds that Defendant has not

rebutted the presumption that he represents a danger to the community or constitutes a serious risk of flight. *See* 18 U.S.C. §3142(g)(3) and (4). Moreover, even not considering the presumption, the Court finds, based on clear and convincing evidence, that Defendant would pose a danger to the safety of other persons and the community, and by a preponderance of the evidence that Defendant constitutes a serious risk of flight. Therefore, the Court specifically finds that there are no conditions or combination of conditions which reasonably will assure Defendant's appearance as required and/or the safety of any other person and the community. 18 U.S.C. § 3142(e).

     5. Accordingly, the Court hereby directs:

        (a) That Defendant be detained without bond and be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

        (b) That Defendant be afforded reasonable opportunity for private consultation with counsel; and

        (c) That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined deliver Defendant to a United States Marshal for the purpose of an appearance in

connection with a court proceeding.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 28th day of March, 2008.

_____
ROBIN S. ROSENBAUM
United States Magistrate Judge

Copies to:

Tim Day, AFPD
Richard Brown, AUSA
Pretrial Services (FTL)